UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORIO CALDERON RULAPAUGH,

Plaintiff,

v.

UNKNOWN RITTER et al.,

Defendants.

Case No. 1:25-cv-1289

Honorable Robert J. Jonker

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate order, the Court granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

## I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. The events

about which he complains occurred at that facility. Plaintiff sues the following IBC staff: Warden Matt Macauley, Assistant Deputy Warden Brian Hadden, Assistant Resident Unit Supervisor Wendy Lane, and Resident Unit Manager Unknown Ritter. (Compl., ECF No. 1, PageID.2.)

Plaintiff alleges that he was transferred to IBC on December 4, 2020.[1] (*Id.*, PageID.4.) At that time, Plaintiff was on "SA"[2] status and "single cell designated." (*Id.*) Plaintiff underwent a review of that status and designation every 12 months, but his status remained unchanged. (*Id.*) Plaintiff sent kites to "multiple employees" trying to get a "proper review." (*Id.*) In an attempt to change his "SA status," Plaintiff filed grievances, communicated with "Lansing" with help from nonparty Assistant Resident Unit Specialist Unknown Wickwire, and sent a kite to a nonparty "warden assistant" with help from nonparty Wickwire. (*Id.*) Plaintiff's paperwork kept "bouncing" between "Lansing" and IBC. (*Id.*)

On an unspecified date, Plaintiff was sent from security level IV to security level II. (*Id.*) Four months later, Plaintiff was sent back to security level IV because of an "improper review." (*Id.*) On an unspecified date, Defendant Hadden stated that he "sees no reason for [Plaintiff] to go to Level II at this time."[3] (*Id.*) Conversely, Defendant Macauley told Plaintiff that he "sees no reason for [Plaintiff] to still be in level 4." (*Id.*) On an unspecified date, Plaintiff sent a kite to Defendant Macauley asking to be moved to level II because he had been sexually assaulted by another inmate. (*Id.*) Defendant Macauley did not respond to that kite. (*Id.*)

---

[1] Plaintiff's complaint does not specify where he was housed prior to arriving at IBC on December 4, 2020.

[2] Plaintiff does not define "SA" status.

[3] In this opinion, the Court corrects the capitalization and punctuation in quotations from Plaintiff's complaint.

Plaintiff alleges that on November 22, 2022, Defendant Lane assigned Plaintiff to a room that she knew had a "work order on [the] door." (*Id.*, PageID.3.) An unidentified individual informed Plaintiff that the door to his assigned room had a "work order written on that day due to not opening." (*Id.*) From November 22, 2022, to November 27, 2022, the door to Plaintiff's room did not open. (*Id.*) During that time, Plaintiff missed meals, medication, and call outs. (*Id.*) On the morning of November 27, 2022, an unidentified officer came to Plaintiff's room "asking if [Plaintiff was] gonna go eat and did not know anyone was still in [the] room due to [the] work order needing fixed." (*Id.*)

Plaintiff next alleges that on an unspecified date, Defendants Lane and Ritter falsely accused Plaintiff of an unspecified violation and gave him a misconduct ticket. (*Id.*) Plaintiff "didn't accept" the misconduct ticket. (*Id.*) Subsequently, nonparty Correctional Officer Moore directed Plaintiff to do a "mock packup" in which anything that did not fit in a packup bag would get thrown away. (*Id.*) Nonparty Correctional Officer Moore then went to Defendant Lane's office. (*Id.*) When Nonparty Correctional Officer Moore returned, he told Plaintiff to unpack. (*Id.*) When Plaintiff asked why he was the only one doing a packup, Nonparty Correctional Officer Moore told Plaintiff to "stop pissing off [Defendant] Lane." (*Id.*)

A "couple days later," Plaintiff was seen by Defendant Ritter regarding Plaintiff's refusal of the misconduct ticket. (*Id.*) Defendant Ritter told Plaintiff that he was not investigating Plaintiff's "claim of refusal" and that if Plaintiff was alleging that Defendant Lane, "a person [Defendant Ritter] knows with over 20 [years] experiencing is lying on a ticket," that Defendant Ritter was going to agree with Defendant Lane and find Plaintiff guilty. (*Id.*) Plaintiff sent three kites to Defendant Lane requesting appeal paperwork, but Defendant Lane did not respond. (*Id.*)

Plaintiff also alleges that on unspecified dates, he attempted to submit grievances and appeals regarding Defendant Lane, but they were never received by the grievance coordinator. (*Id.*, PageID.3–4.) According to Plaintiff, every grievance "seen by [Defendant] Lane disappeared." (*Id.*, PageID.4.) Additionally, Plaintiff alleges that during a random cell search on an unspecified date, all his court paperwork, grievance paperwork, personal letters, and pictures were thrown away. (*Id.*)

Based on the foregoing allegations, Plaintiff brings First Amendment retaliation claims, Eighth Amendment deliberate indifference claims, and Fourteenth Amendment Procedural Due Process Clause claims.[4] Plaintiff seeks monetary damages and injunctive relief.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility

[4] The Court notes that in his complaint, Plaintiff specifically identified the claims that he intended to bring in this suit against each of the Defendants. (*See generally* Compl., ECF No. 1.) Under these circumstances, the Court does not construe Plaintiff's complaint to raise any additional claims against Defendants.

standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Eighth Amendment Deliberate Indifference Claim—Defendant Lane

Plaintiff alleges that Defendant Lane assigned Plaintiff to a room knowing that the room door had a "work order." (Compl., ECF No. 1, PageID.3.) Plaintiff alleges that he was informed by an unidentified individual that the work order was because the door was "not opening." (*Id.*) Plaintiff alleges that once he entered his room on November 22, 2022, the door did not open again until November 27, 2022. (*Id.*) As a result of the door not opening, Plaintiff missed medication and meals during those days, and was "forced to medically detox without food[.]" (*Id.*)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The

Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a

substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Here, Plaintiff alleges only that Defendant Lane knew that there was a "work order on [the] door" when she assigned Plaintiff to that cell. (Compl., ECF No. 1, PageID.3.) This is Plaintiff's only allegation regarding Defendant Lane's involvement and knowledge of Plaintiff's cell door, and as explained below, this allegation does not show that Defendant Lane knew of, and disregarded, an excessive risk to Plaintiff's health or safety when she assigned Plaintiff to that cell. *See Farmer*, 511 U.S. at 837. First, Plaintiff's allegations do not suggest that Defendant Lane knew that the door would not open after Plaintiff was placed in the cell or knew that Plaintiff would be inside that cell for the next five days before the door was opened. Additionally, Plaintiff's allegations do not indicate that Defendant Lane had any involvement in, or knowledge of, the situation beyond the initial room assignment. And, because Plaintiff's allegations indicate that Defendant Lane was only involved in Plaintiff's initial placement in the room, Plaintiff's allegations necessarily do not suggest that Defendant Lane had any knowledge that the door had not been fixed or that Plaintiff was in his cell missing meals and medication for a subsequent five-day period.

Without any further allegations regarding Defendant Lane's knowledge of the situation, Plaintiff has not shown that Defendant Lane knew of, and disregarded, an excessive risk to Plaintiff's health or safety. Even if Defendant Lane's decision to assign Plaintiff to that cell knowing that there was a work order could be considered negligent, that falls short of the deliberate

indifference required to state an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835. Therefore, Plaintiff has failed to show that Defendant Lane acted with deliberate indifference to Plaintiff's health or safety.

Accordingly, for these reasons, Plaintiff's Eighth Amendment deliberate indifference claim against Defendant Lane will be dismissed for failure to state a claim.

**B. First Amendment Retaliation Claims**

Plaintiff alleges that Defendants Lane and Ritter retaliated against Plaintiff by giving Plaintiff an unspecified misconduct ticket and forcing Plaintiff to do a "mock packup." (Compl., ECF No. 1, PageID.3.) Plaintiff also alleges that he was retaliated against when the grievances he filed against Defendant Lane "disappeared," and when he was the subject of a "random cell search" in which all his court paperwork, grievance paperwork, and personal pictures and letters were thrown away. (*Id.*, PageID.3, 4.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)).

**1. Claim Regarding "Mock Packup"—Defendant Lane**

Plaintiff alleges that nonparty Correctional Officer Moore directed Plaintiff to conduct a "mock packup." (Compl., ECF No. 1, PageID.3.) While Plaintiff was doing the "mock packup," he saw nonparty Moore go to Defendant Lane's office. (*Id.*) When Plaintiff asked nonparty Moore why Plaintiff was being required to do a "mock packup," nonparty Moore told Plaintiff to "stop pissing off [Defendant] Lane." (*Id.*)

Here, although it is not clear that Plaintiff had engaged in any protected conduct before the "mock packup," even assuming, without deciding, that Plaintiff had engaged in prior protected conduct, Plaintiff's retaliation claim fails at the second step because Plaintiff alleges no facts to suggest that the "mock packup" constituted adverse action. *See Thaddeus-X*, 175 F.3d at 394.

Moreover, even setting this issue aside, Plaintiff's allegations do not suggest that Defendant Lane had any direct involvement in Plaintiff performing a "mock packup." Plaintiff's allegations show that it was nonparty Correctional Officer Moore who initially ordered Plaintiff to perform the "mock packup." (*Id.*) Then, during the packup, nonparty Moore went to Defendant

Lane's office, and at some unspecified later time, when Plaintiff asked nonparty Moore why Plaintiff had to do the "mock packup," nonparty Moore told Plaintiff to "stop pissing off [Defendant] Lane." (*Id.*) However, Defendant Lane's only connection to the packup was that, during the packup, nonparty Moore went to Defendant Lane's office. (*Id.*) Plaintiff does not explain what was said between Defendant Lane and nonparty Moore during this alleged meeting which might indicate that Defendant Lane implicitly authorized, approved, or knowingly acquiesced to nonparty Correctional Officer Moore's conduct. *See Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016). In fact, Plaintiff does not even allege that Defendant Lane was in her office at that time. Under these circumstances, Plaintiff fails to allege sufficient facts to show that Defendant Lane had any involvement in Plaintiff performing the "mock packup."

Accordingly, for all of these reasons, Plaintiff has failed to state a claim of First Amendment retaliation against Defendant Lane regarding the "mock packup," and the Court will dismiss that claim.

**2. Claim Regarding Misconduct Ticket—Defendants Lane and Ritter**

Plaintiff alleges that Defendants Lane and Ritter falsely accused Plaintiff of an unspecified violation and gave him a misconduct ticket. (Compl., ECF No. 1, PageID.3.) Plaintiff asserts that this misconduct ticket was retaliatory. (*Id.*)

First, Plaintiff fails to identify any protected conduct that motivated the false accusations and the issuance of the allegedly improper misconduct ticket. *See Thaddeus-X*, 175 F.3d at 394. Indeed, Plaintiff does not allege that he engaged in any protected conduct prior to the issuance of the misconduct ticket. Later in Plaintiff's complaint, he alleges that he attempted to file grievances against Defendant Lane, but there is no indication that those grievances were filed before this misconduct ticket was issued. (Compl., ECF No. 1, PageID.3–4.)

As to Defendant Ritter, Plaintiff alleges that he met with Defendant Ritter regarding Plaintiff's refusal of the misconduct ticket. (Compl., ECF No. 1, PageID.3.) During that meeting, Defendant Ritter told Plaintiff that he would not investigate Plaintiff's claim of refusal if Plaintiff was arguing that Defendant Lane, a person Defendant Ritter knows and who has over 20 years of experience, was lying. (*Id.*) Plaintiff does not allege, and the allegations do not suggest, that Defendant Ritter's conduct was motivated by Plaintiff's exercise of a protected right. *See Thaddeus-X*, 175 F.3d at 394. Instead, Plaintiff's own allegations indicate that Defendant Ritter wanted to side with his colleague because he knew the colleague and knew she had over 20 years' experience, not because Plaintiff had engaged in any prior protected conduct. (Compl., ECF No. 1, PageID.3.)

Accordingly, Plaintiff's First Amendment retaliation claim against Defendants Lane and Ritter regarding the issuance of the allegedly false and improper misconduct ticket will be dismissed for failure to state a claim.

### 3. Claim Regarding Grievances—Defendant Lane

Plaintiff alleges that "each grievance and appeal" that he sent regarding Defendant Lane was not received by the grievance coordinator, and that "[e]ach grievance seen by [Defendant] Lane disappeared." (Compl., ECF No. 1, PageID.3–4.) Plaintiff alleges that this conduct was retaliatory and violated the First Amendment. (*See id.*)

Here, Plaintiff's vague allegation that grievances "seen by" Defendant Lane disappeared fails to allege, with particularity, facts that show what Defendant Lane did to violate the asserted constitutional right. *See Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011).. Indeed, Plaintiff does not allege any facts to explain what Defendant Lane "see[ing]" grievances entailed. Plaintiff's vague and conclusory allegation that "[e]ach grievance seen by [Defendant]

Lane disappeared," without any supporting facts or identified dates when this occurred, is insufficient to state a claim against Defendant Lane.

Additionally, Plaintiff's allegations regarding his grievances attribute conduct to unidentified individuals. Such allegations involving the conduct of unidentified individuals is insufficient to state a claim against the named Defendants. *See Heyne*, 655 F.3d at 564. Additionally, Plaintiff has failed to show that any of the named Defendants "implicitly authorized, approved, or knowingly acquiesced in the" alleged unconstitutional conduct of the unidentified individuals. *Peatross*, 818 F.3d at 242.

Accordingly, Plaintiff's First Amendment retaliation claim against Defendant Lane regarding his unsuccessful attempts to file grievances will be dismissed for failure to state a claim.

#### 4. Claim Regarding Cell Search

Plaintiff alleges that "somehow during a random cell search" all of Plaintiff's court paperwork, grievance paperwork, personal letters, and pictures were thrown away. (Compl., ECF No. 1, PageID.4.)

Here, Plaintiff does not identify the individual or individuals involved in this cell search. And, Plaintiff alleges no facts to show that any of the named Defendants were involved in, or had any knowledge of, the cell search. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights). Under these circumstances, Plaintiff fails to state a First Amendment claim against Defendants regarding the search of his cell.

### C. Fourteenth Amendment Due Process Clause Claims

Plaintiff alleges that the issues he experienced attempting to file grievances also constituted a violation of the Fourteenth Amendment Procedural Due Process Clause. (Compl., ECF No. 1, PageID.3–4.) Additionally, Plaintiff claims that he was deprived of due process in his attempts to

modify his security level classification, his "SA" status, and his single cell designation. (*Id.*, PageID.4.)

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To state a Fourteenth Amendment procedural due process claim, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient. . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The United States Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the United States Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his [or her] sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

### 1. Claim Regarding Grievance Process

Plaintiff claims that the grievances he has written against Defendant Lane have disappeared. (Compl., ECF No. 1, PageID.3–4.) Plaintiff argues that this violates the Due Process Clause of the Fourteenth Amendment. (*Id*., PageID.3.)

Various courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. See *Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr*., 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And Michigan law does not create a liberty interest in the grievance procedure. *See Olim*, 461 U.S. at 249; *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Here, because Plaintiff has no liberty interest in the grievance process, any response, or lack thereof, to Plaintiff's grievances did not deprive Plaintiff of due process.

Accordingly, Plaintiff's Fourteenth Amendment Procedural Due Process Clause claims regarding responses to grievances will be dismissed for failure to state a claim.

### 2. Claims Regarding "SA" Status and Security Level—Defendants Hadden and Macauley

Plaintiff alleges that he undertook a series of unsuccessful attempts to change his security level, his "SA" status, and his "single cell" designation. (Compl., ECF No. 1, PageID.4.)

First, the Court notes that Plaintiff alleges events that occurred as early as 2020. (Compl., ECF No. 1, PageID.4.) Plaintiff does not specify when each alleged event occurred, but it is likely that some of the alleged events occurred outside of the three-year statute of limitations for civil rights suits filed in Michigan under § 1983. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v.*

*Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999).

Moreover, Plaintiff's alleges that on an unspecified date, Defendant Hadden told Plaintiff that he "sees no reason for [Plaintiff] to go to level II at this time." (Compl., ECF No. 1, PageID.4.) The Supreme Court has held that a prisoner does not have a protected liberty interest in the procedures affecting his classification and security level because the resulting restraint does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. And, Plaintiff does not have a constitutional or state-created right to a particular security classification. *See Hewitt*, 459 U.S. at 468. Because Plaintiff does not have a protected liberty interest in his security classification, Plaintiff cannot successfully claim that his due process rights were violated regarding that classification. *See Sandin*, 515 U.S. at 484; *Hewitt*, 459 U.S. at 468; *Olim*, 461 U.S. at 250.

Additionally, Plaintiff alleges that on an unspecified date, Defendant Macauley informed Plaintiff "he sees no reason for [Plaintiff] to still be in level 4." (Compl., ECF No. 1, PageID.4.) Plaintiff also alleges that on an unspecified date, he sent a kite to Defendant Macauley asking to be sent to Level II due to a sexual assault from another inmate, but Defendant Macauley ignored this kite. (*Id.*) Again, because Plaintiff does not have a protected liberty interest in his security classification, he cannot successfully claim that his due process rights were violated regarding that classification. *See Sandin*, 515 U.S. at 484; *Hewitt*, 459 U.S. at 468; *Olim*, 461 U.S. at 250.

Furthermore, Plaintiff alleges that various nonparties or unidentified individuals violated the Fourteenth Amendment Procedural Due Process Clause. (Compl., ECF No. 1, PageID.4.) Plaintiff alleges that his status "was reviewed" every 12 months, but he does not identify who conducted this review. (*Id.*) He alleges that he sent kites to "multiple employes (sic) within IBC to

get proper review," but does not identify these employees. (*Id.*) Plaintiff alleges that emails were sent on his behalf "to Lansing," and that these emails were ignored, but does not attribute that conduct to any specific individual. (*Id.*) Plaintiff alleges that a kite was sent on his behalf to the "warden assistant," who did not respond, but does not identify this "warden assistant." (*Id.*) Plaintiff claims that "IBC (Bellamy Creek) and Lansing office" continued to "bounce" Plaintiff's paperwork back and forth, but Plaintiff does not attribute any of that conduct to a specific individual. (*Id.*) None of Plaintiff's allegations suggest that a named Defendant was responsible for Plaintiff's continued "SA" status or single cell designation. Plaintiff's allegations regarding unidentified, nonparty individuals are insufficient to establish that any of the named Defendants were personally involved in the alleged violations of Plaintiff's constitutional rights.

Accordingly, Plaintiff's Fourteenth Amendment Procedural Due Process Clause claims against Defendants Hadden and Macauley regarding his security level and other classifications will be dismissed for failure to state a claim.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might

raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

A judgment consistent with this opinion will be entered.

Dated: August 13, 2026

/s/ Robert J. Jonker
Robert J. Jonker
United States District Judge